UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER CHATMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:08 CV 1656 DDN |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM**

This action is before the court upon the petition of Missouri state prisoner Christopher Chatman for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Petitioner Chatman has also moved to expand the record (Doc. 16), for funds to employ an investigator (Doc. 17), for leave to conduct discovery (Doc. 18), and for an expedited decision on the petition (Doc. 24). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 14.)[1] For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I. BACKGROUND**

In 2003, petitioner Chatman was convicted after a jury trial in the Circuit Court of the City of St. Louis of first-degree assault (Count I), armed criminal action (Count II), and victim tampering (Count III). (Doc. 1 at 1.) He was sentenced to 30 years imprisonment on Count I,

---

[1]This action was originally assigned to District Judge Charles A. Shaw who referred the action of Magistrate Judge Mary Ann Medler for a recommended decision under 28 U.S.C. § 636(b). Because the Respondent advised the court that the Honorable Booker T. Shaw, the a judge of the Missouri Court of Appeals, participated in the affirming of petitioner Chatman's convictions on direct appeal (Doc. 8), District Judge Charles A. Shaw ordered the action reassigned to another judge of this court by the random selection process and it was assigned to the undersigned Magistrate Judge. (Doc. 10.) Thereafter, the petitioner and the respondent each filed documentary consents to the exercise of authority by the undersigned Magistrate Judge under 28 U.S.C. § 636(c).

30 years on Count II, and 7 years on Count III.  (Id.)  The sentences were ordered to run consecutively, totaling 67 years.  (Id.)

The Missouri Court of Appeals affirmed the judgment.  State v. Chatman, 149 S.W.3d 544 (Mo. Ct. App. 2004)(per curiam); (Doc. 13, Ex. L.)  Thereafter, petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  (Doc. 1 at 3.)  The Circuit Court denied the motion without a hearing.  (Doc. 13, Ex. I, at 83-92.)  The denial of relief was affirmed by the Missouri Court of Appeals.  Chatman v. State, 242 S.W.3d 445 (Mo. Ct. App. 2007); (Doc. 13, Ex. L).  On December 27, 2007, petitioner filed a motion for transfer.  (Id. at 4.)  On January 22, 2008, the Missouri Supreme Court denied transfer.  (Id.)

On October 27, 2008, petitioner filed the instant petition for a writ of habeas corpus.  (Doc. 1)

The Missouri Court of Appeals described the facts established by the evidence thus:

> Viewed in the light most favorable to the verdict, the record reveals that Movant and Marquis Williams (Victim) were acquaintances.  On July 21, 2001, Movant went to Victim's home and shot Victim multiple times in the legs and chest. One of Victim's sisters, Carrie, saw Movant running away with the gun still in his hand and watched him get into the back of a red minivan with two female occupants.  Another of Victim's sisters, Vanessa, arrived soon after the shooting. Victim told Vanessa that he had been shot by Movant.  Victim survived but went to the hospital and underwent surgery to remove the bullets from his body.
> The following day, Victim identified Movant as the shooter from a photographic lineup.  A few days later, Victim and Carrie identified Movant as the shooter from a live lineup.  Movant was subsequently arrested and charged but posted bond and was released.  On August 17, 2001, Movant drove by Victim's house and made threatening gestures toward Victim and his family indicating he would "get them."
> At trial, Movant testified on his own behalf and presented the testimony of Nicole Champion (Champion), Cheryl Campbell (Campbell), and his bail bondsman, Phillip March (March).  Movant testified that he was not present at the scene of the shooting on July 21, 2001, and that he did not shoot Victim.  Movant further testified that he did not threaten Victim on August 17, 2001.  The testimony of Champion, Campbell, and March was offered to corroborate Movant's testimony.

(Doc. 13, Ex. L (Memorandum at 2-3.)

## II. PETITIONER'S GROUNDS FOR HABEAS CORPUS RELIEF

Petitioner claims ten grounds for relief in this habeas action:

(1) Petitioner received ineffective assistance of trial counsel because counsel failed to object to hearsay evidence during the victim's testimony.

(2) Petitioner received ineffective assistance of trial counsel because counsel knowingly presented perjured testimony.

(3) Petitioner received ineffective assistance of trial counsel because counsel failed to call Veronica Lance to testify that petitioner was not the shooter.

(4) Petitioner received ineffective assistance of trial counsel because counsel did not convey the State's plea offer when petitioner would have accepted such an offer.

(5) Petitioner received ineffective assistance of trial counsel when counsel failed to investigate the audiotapes of 911 calls made in connection with the shooting on July 21, 2001, and the threats on August 17, 2001.

(6) Petitioner received ineffective assistance of trial counsel because counsel failed to impeach five witnesses due to their prior inconsistent statements.

(7) Petitioner received ineffective assistance of trial counsel because counsel failed to call Shalonda Liddell as an alibi witness.

(8) Petitioner received ineffective assistance of trial counsel when counsel failed to inform the trial court of threats made by the prosecutor to witness Nicole Champion.

(9) Petitioner received ineffective assistance of trial counsel when counsel failed to object to the prosecutor's closing argument, in which she inferred that Champion could not provide an alibi for petitioner.

(10) Petitioner received ineffective assistance of appellate counsel when counsel failed to assert on direct appeal that the State had failed to comply with the rules of discovery.

Respondent does not dispute petitioner has exhausted his state court remedies. Respondent argues, however, that Grounds 8 and 9 are procedurally barred and that all ten grounds are without merit. (Doc. 12 at 23-24.) The court considers the grounds seriatim.

## III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for the claims they make in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limitation periods for raising issues on direct appeal and in motions for post-conviction relief, no proper procedure for litigating his federal habeas claims remains available to petitioner.

However, exhaustion in the sense that petitioner has no remaining procedure for bringing a claim to the state court does not satisfy the statutory requirement. Rather, petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, his ground for federal habeas relief is barred from being considered by the federal courts. King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court); Boyd v. Groose, 4 F.3d 669, 671 (8th Cir. 1993).

Nevertheless, petitioner may avoid the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. Id. at 750-52.

To establish actual prejudice, the petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal quotations

omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland.").

To demonstrate that the failure to review his grounds for relief would result in a fundamental miscarriage of justice, the petitioner may show that he was actually innocent. Murray v. Carrier, 477 U.S. 478, 495-96 (1986). A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence. Schlup v. Delo, 513 U.S. 298, 324 (1995). Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit a habeas court to reach the merits of a procedurally defaulted claim. Id. at 316.

## IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to clearly" established law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or ... decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000)(plurality opinion). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

The standard for habeas review articulated by AEDPA applies only to those claims which were adjudicated on the merits by a state court. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002). Where a petitioner's claims were not adjudicated on the merits by a state court, the pre-AEDPA standard for habeas review governs. Id. ("Because this claim apparently was not adjudicated by the Minnesota court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, the habeas petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial or that the verdict likely would have been different absent the now-challenged [defect]." Id. 278 F.3d at 866 (internal quotations omitted).

## V. DISCUSSION

### INEFFECTIVE ASSISTANCE OF COUNSEL

All ten grounds allege ineffective assistance of counsel. In order to prevail on a habeas claim of constitutionally ineffective assistance of counsel, the petitioner must demonstrate a lack of reasonable performance of counsel and prejudice resulting from the unreasonable representation. Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the performance component, petitioner must show that his lawyer's performance was unreasonable and not valid trial strategy. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Thai v. Mapes, 412 F.3d 970, 978-79 (8th Cir. 2005). Under the prejudice component, a petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Morales v. Ault, 476 F.3d 545, 550 (8th Cir.), cert. denied, 128 S. Ct. 177 (2007).

**GROUND 1**

In Ground 1, petitioner claims that trial counsel was ineffective for failing to object to hearsay evidence during the victim's testimony. (Doc. 1 at 5.) The victim's testimony included a non-witness statement. (Doc. 13, Ex. E at 313.) Petitioner alleges the following statement by the victim about the car was hearsay:

> A:   It went around, came back down the street. That's when the police pulled over the red Corsica and got the driver out of the Corsica, and the driver stated that he just dropped Chris off around the corner, so that's when they took the driver, Little Man, Robert Adams (sic.), into custody for questioning.

Id. Trial counsel did not move to exclude or request a continuance because the victim's statement was hearsay. (Id.) Petitioner argues that trial counsel should have moved to exclude or requested a continuance on the grounds that the victim's statement was hearsay and not disclosed before trial. (Id.)

The Missouri Court of Appeals rejected this ground for relief. (Id., Ex. L at 4.) The court correctly applied the two-prong Strickland test for ineffectiveness. (Id.) The court held that counsel acted within the bounds of reasonable trial strategy. (Id. at 5.) Furthermore, the court held that petitioner was not prejudiced because "[t]he absence of the driver's testimony had no bearing on [Chatman's] guilt or innocence in light of the fact that other eyewitnesses placed [Chatman] at the location of the threat incident at the time the incident occurred." (Id. at 6.)

The Supreme Court held in Strickland, that to establish prejudice, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Given that the victim's testimony regarding the threat incident was brief and inconsequential and that it was corroborated by other witnesses, Chatman failed to establish prejudice affecting the trial's outcome. If an error had no more than a slight influence on the verdict, it is a harmless error. United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994).

Ground 1 is without merit.

**Ground 2**

In Ground 2, petitioner alleges that trial counsel knowingly presented perjured testimony by Phillip March, petitioner's bail bondsman. (Doc. 1 at 6.) March testified that he was with petitioner and drove him to court from 9 a.m. to 11 a.m. on the day in question.

(Doc. 13, Ex. E at 437-440.) Petitioner testified that he spoke only with March and did not leave his house between 9:00 a.m. and 11:00 a.m. on the day in question. (Id. at 379-380.)

The Missouri Court of Appeals rejected this claim, because calling March as a witness was reasonable trial strategy. (Id., Ex. L at 6.) Nothing in the record suggests that March committed perjury. Additionally, the record does not show any evidence that counsel knew March's testimony was false. Instead, March's testimony provided an alibi other than petitioner's own self-serving testimony. (Id., Ex. E at 378-380.) "Mere inconsistency between witnesses' testimony is not necessarily perjury...." United States v. Martin, 59 F.3d 767, 770 (8th Cir. 1995). Furthermore, the Eighth Circuit gives great deference to counsel's judgment in selecting witnesses. Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001). Given that the testimony provided an alibi for petitioner and could create reasonable doubt, providing inconsistent testimony is a reasonable trial strategy.

Accordingly, this ground is without merit.

**Ground 3**

In Ground 3, petitioner contends that trial counsel failed to call Veronica Lance to testify that petitioner was not the shooter. (Doc. 1 at 8.) Veronica Lance was the victim's girlfriend. (Doc. 13, Ex. L at 7.) She was not present at the scene of the shooting. (Id.) Thus, she could not identify the shooter. (Id.) The victim, Carrie Jarvis, and Vanessa Franklin, all eyewitnesses, identified petitioner as the shooter. (Id., Ex. E at 196-197, 229-230, 235, 268.)

The Missouri Court of Appeals reasoned that because Lance was not an eyewitness to the shooting, she could not have testified on the identity of the shooter. (Id., Ex. L at 7.) It was not unreasonable for counsel to not call Lance because she could not provide any testimony to contradict the testimony of the three eyewitnesses. (Id.) In order to establish a successful constitutional violation, petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [the] witness outside the wide bounds of strategic choices that counsel is afforded." Hanes, 240 F.3d

at 698. Petitioner cannot establish that counsel's decision was unreasonable nor that he was prejudiced by counsel's decision. Therefore, Ground 3 is without merit.

**Ground 4**

In Ground 4, petitioner contends that trial counsel did not tell him about the State's plea offer; had counsel done so, he would have accepted the offer. (Doc. 1 at 10.) Petitioner argues that failing to inform him of a plea bargain is a gross deviation from accepted professional standards. (Id.)

At sentencing, the trial court had the following exchange with petitioner:

| | |
|---|---|
| The Court: | Did your lawyers discuss with you your options, as far as standing trial versus pleading guilty? |
| Defendant: | No, sir, not - not Ms. Nunn. |
| The Court: | All right. Well, did you ever advise Ms. Nunn that you wished to plead guilty? |
| Defendant: | No, sir. |
| The Court: | Was it your intention to go to trial? |
| Defendant: | Yes, sir. |

(Doc. 13, Ex. E at 514-15.)

The Missouri Court of Appeals rejected petitioner's claim due to his own testimony that undermined his claim. (Id., Ex. L at 8.) At sentencing, petitioner stated that he never expressed to counsel that he wished to plead guilty. (Id., Ex. E at 514-515.) Furthermore, he stated that it was his intention to go to trial. (Id.) Petitioner's argument fails under the second part of the Strickland test because petitioner's own testimony directly refutes that he would have accepted a plea bargain.

Petitioner was not prejudiced and Ground 4 is without merit.

**Ground 5**

In Ground 5, petitioner alleges his counsel failed to investigate the audiotapes of 911 calls made in connection with the shooting on July

- 9 -

21, 2001, and the incident in which Chatman threatened the victim and his family on August 17, 2001. (Doc. 1 at 11.) Petitioner argues counsel missed an opportunity to discredit the state's witnesses in a trial based on credibility. (Doc. 15 at 21.)

Petitioner argues that the 911 calls did not occur on the days of the respective incidents, but several days after. (Doc. 1 at 11.) However, the record indicates that the 911 call from July 21 came immediately after the shooting. (Doc. 13, Ex. E. at 120-122.) Several police officers and Vanessa Franklin testified that a 911 call was made immediately after the shooting. *(Id. at 232.)

On direct appeal, the Missouri Court of Appeals rejected petitioner's claim because he failed to show that the 911 calls were made several days after the incident and failed to demonstrate how the alleged failure of counsel prejudiced him. (Id., Ex. L at 8.) The record shows that the 911 calls were made immediately after the July 21 shooting and the August 17 threats. (Id., Ex. E at 126, 145, 158, 232.) No evidence of the alleged 911 calls exists. (Id., Ex. L at 8.) Given that there is no evidence to support petitioner's claim, there is no reasonable likelihood that counsel's failure to investigate prejudiced the petitioner. Therefore, Ground 5 is without merit.

**Ground 6**

In Ground 6, petitioner alleges his counsel failed to impeach five witnesses with prior inconsistent statements. (Doc. 1 at 12.) Petitioner alleges that Marquis Williams, Vanessa Franklin, Carrie Jarvis, Kyle Rosemann, and Reginald Davis made inconsistent statements. (Id.) Therefore, petitioner argues that counsel should have impeached all five witnesses. (Id.)

The Missouri Court of Appeals rejected this claim because none of the witnesses' alleged inconsistencies were material to the case and would have created a reasonable probability of a different outcome. (Doc. 13, Ex. L at 8.)

1. Marquis Williams (the victim)

Petitioner argues that the victim testified inconsistently as to which hand petitioner used to fire the gun. (Id., Ex. G at 41.) In the first trial[2], the victim testified that the petitioner held the gun in his right hand. (Id., Ex. K at 9.) However, in the second trial, the victim testified that the gun was in petitioner's left hand. (Id., Ex. E at 307-308.) Given that counsel impeached the victim on this point, petitioner did not suffer from unreasonable representation on this point. (Id.)

Petitioner argues that the victim testified inconsistently about who arrived first at a night club a few days prior to the shooting. (Id., Ex. G at 41.) In both trials, the victim was never asked who had arrived first, and he never provided an answer to that question. (Id., Ex. K at 10; Id., Ex. E at 272-274, 299-301.) The record proves that there was no inconsistency. (Id.)

Petitioner argues that the victim testified inconsistently about viewing the live lineup. (Id., Ex. G at 41.) Petitioner argues that the victim first testified that his sister, Carrie Jarvis, was with him for moral support rather than to identify the shooter. (Id.) However, the victim's testimony was consistent with the scenario of the victim and Jarvis viewing the lineup separately. (Id., Ex. K at 21-22; Id., Ex. E at 288.) The record shows no inconsistency. (Id.)

Petitioner argues that the victim testified inconsistently about where the petitioner punched the victim a few days before the shooting. (Id., Ex. G at 41-42.) In the first trial, the victim claimed that he was punched in the mouth. (Id., Ex. K at 10.) In the second trial, the victim claimed that he was punched on his cheek. (Id., Ex. E at 300.) This inconsistency is collateral and irrelevant to the shooting. Impeaching the victim on this point would not have changed the outcome of the trial.

Petitioner argues that the victim testified inconsistently about what was said at the time of the shooting. (Id., Ex. G at 42.) At the first trial, the victim testified that he had said "stop playing" when

---

[2]There were two trials in this case. The first trial resulted in a hung jury. The second trial resulted in the conviction at issue here.

- 11 -

Chatman *started shooting*. (Id., Ex. K at 7.) At the second trial, the victim testified that he only said "ah" *when shot*. (Id., Ex. E at 325.) Given that the questions in the two trials inquired as to what the victim said at different (albeit close) times in the event, the victim's testimony is not inconsistent.

Petitioner fails to show any unimpeached inconsistent testimony by the victim regarding any material fact.


2. Vanessa Franklin

Petitioner argues that Vanessa Franklin testified inconsistently as to whether she had spoken with the police and whether she had known petitioner prior to the shooting. (Id., Ex. G at 42-43.) Franklin testified consistently at both trials that while she did not know petitioner prior to the shooting, she did witness petitioner shoot the victim. (Id., Ex. K at 25-28; Id., Ex. E at 229-235.) Franklin's testimony is not inconsistent.

3. Carrie Jarvis

Petitioner argues that Carrie Jarvis testified inconsistently about whether she had run after the getaway car. (Id., Ex. G at 43.) At both trials, Jarvis testified that she had chased the getaway car on foot. (Id., Ex. K at 60; Id., Ex. E at 197.) Jarvis's testimony was not inconsistent.

Petitioner argues that Jarvis testified inconsistently about the day on which she had identified petitioner as the shooter. (Id., Ex. G at 43.) The record shows that Jarvis testified consistently at both trials that she had identified petitioner in a lineup several days after the shooting. (Id., Ex. K at 61; Id., Ex. E at 201.)

Thus, Jarvis's testimony is not inconsistent.

4. Kyle Rosemann

Petitioner argues that Officer Kyle Rosemann testified inconsistently about Vanessa Franklin's description of the gunman. (Id., Ex. G at 44.) In both trials, Officer Rosemann testified that

Franklin did not give him a description of the gunman. (Id., Ex. K at 17; Id., Ex. E at 133.)

Petitioner argues that Officer Kyle Rosemann testified inconsistently about the number of females in the getaway car. (Id., Ex. G at 44.) Officer Rosemann only testified at the second trial that Jarvis had told him that she saw a female driver. (Id., Ex. E. at 135.) Thus, Officer Rosemann's testimony is not inconsistent.

5. Reginald Davis

Petitioner argues that Detective Reginald Davis testified inconsistently about the lineup. (Id., Ex. G at 44.) In the first trial, Davis testified that he had taken the witnesses into the lineup room separately. (Id., Ex. K at 72.) In the second trial, Davis testified that he summoned each witness from downstairs. (Id., Ex. E at 150.) These statements are consistent with the scenario that the witnesses viewed the lineup separately.

Davis's testimony is not inconsistent.

In regards to the petitioner's sixth ground for relief, all of the inconsistent statements at issue are either not inconsistent or were irrelevant to the outcome of this case. This ground is without merit.

**Ground 7**

In Ground 7, petitioner argues that counsel failed to call Shalonda Liddell as an alibi witness. (Doc. 1 at 13.) According to petitioner, Mrs. Liddell's testimony could "corroborate the petitioner's own testimony as to his whereabouts at the time of the shooting." (Doc. 15 at 31.)

The Missouri Court of Appeals rejected petitioner's arguments, noting that counsel's decision not to call Liddell as a witness was reasonable. (Doc. 13, Ex. L at 7.) Cheryl Campbell testified that she saw petitioner come home around 5:00 p.m. and go directly upstairs. She left around 7:00 or 7:15 p.m. and did not see petitioner leave. (Id., Ex. K at 108-119.) Liddell's testimony would have been similar to Campbell's testimony. (Id., Ex. K at 108-119.) Furthermore, the Court of Appeals noted that Liddell's testimony was "contradictory and vague,

was possibly fabricated, and reasonably could have been interpreted by the jury as not credible." (Id., Ex. L at 7.) Given that Liddell's testimony was cumulative and would not have unqualifiedly supported an alibi defense, counsel's decision not to call Liddell as a witness was reasonable.

Ground 7 is without merit.

**Grounds 8 and 9**

In Grounds 8 and 9, petitioner argues that trial counsel failed to inform the trial court of threats made by the prosecutor and for failing to object to the prosecutor's closing argument, in which she inferred that Champion could not provide an alibi for petitioner. (Doc. 1 at 14, 15.)

Respondent argues that Grounds 8 and 9 are procedurally barred, because he abandoned the claims before the post-conviction motion court. (Doc. 13, Ex. L at 9); Zeitvogel v. Delo, 84 F.3d 276, 283 (8th Cir. 1996)(finding that petitioner's ineffectiveness claim was procedurally barred from federal habeas review because petition "abandoned the claim during his state court appeal from the denial of post-conviction relief.") When a state prisoner has abandoned his federal claims in state court pursuant to a state procedural rule, federal habeas review of the claims is barred unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Petitioner alleges that during the post-conviction hearing, "it was unclear as to what the motion court was granting a hearing on." (Doc. 15 at 40.) Specifically, petitioner claims that the waiver never addressed a hearing on the threat of a defense witness or counsel's failure to object to the prosecutor's closing argument. (Id.) Petitioner argues that this will result in a fundamental miscarriage of justice. (Id.) However, the fundamental miscarriage of justice exception is only applicable "when the petitioner makes a showing, based on new evidence, that a constitutional violation has probably resulted

in the conviction of one who is actually innocent." Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995). Given that petitioner does not have any new evidence nor alleges that a constitutional violation probably resulted in his wrong conviction, his eighth and ninth grounds for relief are procedurally barred from review by this Court.

Alternatively, petitioner's eighth and ninth grounds are without merit. Champion's testimony concerning the time she saw petitioner was impeached in the first trial. (Doc. 13, Ex. K at 156-160.) Counsel's strategic decision not to pursue the same line of questioning was reasonable because her testimony would add nothing to petitioner's alibi defense. Given that failing to pursue that line of questioning was a reasonable trial strategy, the prosecutor can comment on the fact that Champion did not testify that she was with petitioner on the night in question. Thus, an objection to the comment would have lacked merit. Failing to raise a meritless objection is not considered ineffective assistance. Garrett v. United States, 78 F.3d 1296, 1303 (8th Cir. 1996).

Petitioner's eighth and ninth grounds are procedurally barred and without merit.

**Ground 10**

In Ground 10, petitioner argues that appellate counsel failed to assert on direct appeal that the State had failed to comply with the rules of discovery. (Doc. 1 at 16.) In particular, he alleges that the State had failed to disclose: (1) the arrest of Robert Addison and statements made by Addison; (2) the arrest and results of the investigation involving Kimberly Chatman and Nicole Champion; (3) a 911 call from July 27, 2001; and (4) a 911 call from August 21, 2001. (Id.)

The Missouri Court of Appeals rejected this ground, finding that petitioner's claim is based on inferences, rather than the record itself. (Doc. 13, Ex. L at 10.) Furthermore, the Court found that the petitioner failed to establish prejudice because he could not explain how the outcome of his trial and appeal would have been different had the allegedly undiscovered evidence been admitted at trial. (Id.)

Appellate counsel is subject to the <u>Strickland</u> test for constitutional ineffectiveness. <u>Link v. Luebbers</u>, 469 F.3d 1197, 1205 (8th Cir. 2006), <u>cert. denied</u>, 128 S.Ct. 488 (2007). The record reveals nothing that would indicate that petitioner's appellate counsel failed to assert an obvious error. (Doc. 13, Ex. L at 10.) In fact, the record indicates that the State provided petitioner with discovery, including several police reports, lineups, photographs, copies of 911 records, medical records, and affidavits. (<u>Id.</u>, Ex. J at 3.) There is no substantial basis for additional undiscovered evidence. Thus, the outcome of the appeal would not have reasonably been different.

Given that appellate counsel's strategy was reasonable and that there is no substantial basis for the additional undiscovered evidence, Ground 10 is without merit.

**Motions to Expand the Record**

Petitioner has moved to expand the record (Doc. 16), for funds to employ an investigator (Doc. 17), and for leave to conduct discovery (Doc. 18). Petitioner requests 911 tape recordings of the calls allegedly made on July 27 and August 21, 2001, Veronica Lance's testimony, and police reports of Kimberly Chatman and Nicole Champion's arrest. He seeks to acquire affidavits from certain individuals. And he requests permission to conduct discovery of the police report of Robert Addison Jr.'s arrest on August 17, 2001, the results of the investigation of Kimberly Chatman and Nicole Champion, any and all statements by Veronica Lance, and all plea offers.

By these motions petitioner is seeking to reopen the record of the state court decisions in his case. This he may not do, because this court is limited in its habeas corpus jurisdiction under 28 U.S.C. § 2254, and the record is sufficient to fully consider all of the grounds for habeas relief. These motions are therefore denied.

## VI. CONCLUSION

For the reasons stated above, the petition of Christopher Chatman for a writ of habeas corpus and the pending motions are denied. An appropriate Judgment Order is issued herewith.

    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 14, 2009.